IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

CATHY O'QUINN                                                                                    PLAINTIFF

vs.                                          No. 6:18-cv-6025

COUNTRY INN, INC.; CHARLES KNABE; &                                      DEFENDANTS
SHON KNABE

---

**DEFENDANTS' BRIEF IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

---

COME NOW, Defendants, Country Inn, Inc.; Charles Knabe, and Shon Knabe, by and through their attorneys, Mann & Kemp, PLLC, and respectfully move the Court for summary judgment pursuant to Fed. R. Civ. P. 56.

## INTRODUCTION

Plaintiff commenced this action alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq, as well as a single claim for violations of the Arkansas Minimum Wage Act, Ark. Code Ann. § 11-4-201 et seq against the County Inn, Inc., a Hot Springs motel, and its shareholders. Defendants responded to Plaintiff's Complaint by moving the Court to dismiss the action pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment pursuant to Rule 56, arguing that, as a matter of law, Plaintiff could not show she was entitled to either individual or enterprise coverage under the FLSA. The Court granted Defendants partial summary judgment on the issue of enterprise coverage, ruling that Defendants' evidence on summary judgment established the motel's annual revenue of less than the $500,000 threshold of 29 U.S.C. § 203(s)(1)(A)(ii). *O'Quinn v. Country Inn, Inc.*, Doc. 15, 2018 WL 3381421 (W.D. Ark. July 11, 2018). Attached to Defendants' motion for summary judgment was the affidavit of Charles Knabe and The Country Inn's tax returns for 2015 through 2017 showing that "Country Inn's gross sales volume fell short of the FLSA's

1

$500,000 threshold." *Id.*, at *5. The Court concluded "that Defendants' summary judgment motion as to the issue of FLSA enterprise coverage should be granted." *Id.*

The Court left open FLSA individual coverage, noting that "several district courts within this circuit have been reluctant to grant motions to dismiss as to individual coverage before the parties have had an opportunity to engage in discovery." *Id.*, at *4. The Court ruled that, "because discovery may yield additional facts regarding the nature and extent of Plaintiff's job duties at Country Inn, the Court will deny Defendant's motion to dismiss as to this issue." *Id.* But the Court announced that it would revisit the issue after the parties had an opportunity to conduct discovery: "The Court will entertain a motion for summary judgment on the issue once the parties have concluded discovery, should either party wish to file such a motion." *Id.*

Defendants now move the Court for summary judgment of Plaintiff's FLSA claim on two grounds: Plaintiff's position at the Country Inn was exempt from FLSA coverage pursuant to 29 C.F.R. § 785.23 and that discovery has yielded no facts tending to show that Plaintiff was engaged in commerce or in the production of goods for commerce, meaning there is no FLSA individual coverage.

It is undisputed that Plaintiff lived in a company owned apartment on the premises. *See* Affidavit of Charles Knabe, ¶ 6; *see also* Declaration of Cathy O'Quinn, ¶ 5. She thus resided on her employer's premises. Plaintiff and Country Inn reached an agreement before she worked at the motel that she would perform the duties as resident manager in exchange for a place to live with utilities completely paid by Defendants and $400 per week in compensation. The parties operated under this agreement for the entirety of Plaintiff's stay at the Country Inn. Plaintiff accepted the compensation package. The parties' agreement is "reasonable" under the circumstances, meaning the position is exempt to the wage and overtime requirements of the FLSA. 29 C.F.R. § 785.23; *Gaby v. Omaha Home*

*for Boys,* 140 F.3d 1184 (8th Cir. 1998).  Plaintiff cannot plead a claim for FLSA wage and overtime violations.

Furthermore, discovery has not revealed any facts showing Plaintiff produced goods intended for interstate commerce or engaged in interstate commerce while employed as the resident manager of Country Inn, a twenty-eight-room motel in Hot Springs, Arkansas.  Plaintiff's work was purely local, meaning there is no individual coverage under 29 U.S.C. §§ 206, 207.

Because Plaintiff was engaged in purely local activities when she worked at the Country Inn and because she resided at the Country Inn pursuant to an agreement between the parties, exempting the position from FLSA coverage, Defendants move for summary judgment of the FLSA claims.

## LAW & ARGUMENT

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). "Summary judgment is proper 'if the pleadings, the discovery and disclosure materials on file and any affidavits show'" an absence of a genuine dispute as to a material fact.  *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011).  "The movant bears the initial responsibility of informing the district court of the basis for its motion and must identify those portions of the record which it believes demonstrate the absence of material fact."  *Id.*  Having met that burden, "the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial."  *Id.*  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial," and summary judgment is appropriate.  *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

The respondent to a motion for summary judgment "may not simply rely on the allegations in the pleadings to create such a dispute, but must 'demonstrate that the record, taken as a whole, could permit a rational finder of fact to rule in their favor.'"  *Shoemaker v. Lake Arbutus Pavilion, LLC*,

3

115 F.Supp.3d 974, 978 (N.D. IL 2015).  In a FLSA case, the plaintiff must "go beyond the pleadings and affirmatively demonstrate a genuine issue of material fact for trial" and only use "admissible evidence to demonstrate and issue for trial."  *Id.*

### A. 29 C.F.R. § 785.23

"The Fair Labor Standards Act establishes a maximum number of work hours that employees may work without receiving overtime pay, and employers and employees may not, in general, make agreements to pay and receive less pay than the statute provides."  *Gaby*, 140 F.3d at 1186.  An exception to this general rule is set forth in the following regulation:

> An employee who resides on his employer's premises on a permanent basis or for extending periods of time is not considered as working all the time he is on the premises.  Ordinarily, he may engage in private pursuits and thus have enough time for eating, sleeping, entertaining, and other periods of complete freedom from all duties when he may leave the premises for purposes of his own.  It is, of course, difficult to determine the exact hours worked under these circumstances and any reasonable agreement of the parties which takes into consideration all of the pertinent facts will be accepted.  This rule would apply, for example, to the pumper of a stripper well who resides on the premises of his employer and also to a telephone operator who has the switchboard in her home.

29 C.F.R. § 785.23.  "Section 785.23 envisions some jobs in which the exact number of hours worked are difficult to determine due to the employee residing on the employer's premises."  *Gaby*, 140 F.3d at 1187.  The plaintiffs in *Gaby* were "Home Parents" who lived at the Omaha Home for Boys.  140 F.3d at 1186.  There, the Home Parents and their employer agreed that the Home Parents would work and be compensated for sixty hours of work each normal work week and that the Home Parents would be paid "time" on the first forty hours worked and "time-and-a-half" on the next twenty hours.

4

The plaintiffs brought a wage and overtime FLSA claim against the Home for Boys, which defended the litigation under section 785.23. The District Court concluded that the agreement between the Home Parents and the Omaha Home for Boys was "reasonable" under the circumstances and the Eighth Circuit affirmed.

The Court in *Gaby* noted that the House Parents relationship with the Home for Boys was "exactly the type of employment dealt with in § 785.23." *Id.*, at 1187. The house parents were free to engage in private pursuits during job time inactivity. *Id.* "Moreover, and most significantly, demands for attention were intermittent, allowing private activities frequently and for extended periods during a 24-hour day." *Id.* The Court of Appeals thus affirmed the District Court's ruling in favor of the Home for Boys: "The Omaha Home for Boys and the house parents made a reasonable agreement as to the amount of time normally required to perform the work of the house parents." *Id.*, at 1190.

In *Wood v. ABCM Corporation*, No. 17-CV-3001, 2018 WL 1020128 (N.D. Iowa Feb. 22, 2018), the plaintiff, Quinn Wood, alleged that the defendant, the Hampton Motel, a "small motel with approximately nine employees" in Iowa violated FLSA's overtime provisions. *Id.*, at *2. Wood began working at the motel as "a part-time front desk clerk" whose "duties included greeting and checking in guests, tracking the money drawer, providing necessities to guests and some housekeeping." He worked at the motel roughly between 18 and 32 hours each week during which he also rented an apartment located on-site at the motel at $400 a month. The parties' lease agreement contained no provisions relating to the plaintiff's work duties at the motel, but the "parties agreed that if Wood moved into the on-site apartment he would cover the overnight shift." *Id.*, at *3.

Wood's overnight duties consisted of answering the motel's phone which rang in his apartment, making himself available to assist guests if needed, helping guests check in and out of the motel, and assisting guests who locked themselves out of their rooms. *Id.* The Hampton Motel paid Wood for his overnight duties in fifteen-minute increments for every time he was called on the

5

perform his overnight duties at the motel. *Id.* The rest of the time he was "free to engage in personal activities in his apartment, including: sleeping, spending time on his computer, eating meals, having friends over, reading books, watching television, doing laundry or any other activity that did not prevent him from assisting customers if needed." *Id.*

The motel moved for summary judgment asserting the § 785.23 exception. The District Court agreed the exception applied: "The Court also independently finds that the homeworker's exception applies because Wood worked out of his personal apartment, which was located on Hampton Motel's premises, Wood's duties were sporadic and difficult to predict, Wood had abundant time for private pursuits during the shift and wood had periods of complete freedom during the day." *Id.*, at *5.

Wood argued that there was no § 785.23 agreement between him and the motel and, if there was an agreement, it was unreasonable. The Court rejected both arguments, noting that there was clear evidence that Wood accepted the terms of the agreement and performed in conformity with the agreement: "Accordingly, the court finds that the undisputed facts establish the existence of an agreement between the parties." *Id.* The Court also rejected Wood's argument that the agreement was unreasonable, finding that the arrangement fairly compensated Wood for his time on the overnight shift and that the agreement was reasonable as a matter of law.

As in *Wood* and *Gaby v. Omaha Home for Boys*, Plaintiff's job at the Country Inn was "exactly the type of employment dealt with in § 785.23." The exact number of hours worked were difficult to determine due the sporadic and inconsistent nature of the work and the business. *See* the Affidavit of Charles Knabe, ¶ 4–5. Plaintiff lived on the premises for an extended period of time: approximately seven months. Through all of that time Plaintiff enjoyed the freedom to engage in "normal private pursuits" throughout the day and night, including substantial periods of downtime and freedom to come and go as she pleased. Plaintiff was provided with a place to live on the premises and issued a company-issued iPhone, which she was free to carry with her wherever she went on her company and

personal business. Plaintiff claims to have been on-call twenty-four hours a day, but the bulk of those hours were normal sleeping hours when Plaintiff was free to sleep or do whatever else she did in private in the apartment the company provided her free of charge. The parties reached an agreement before Plaintiff began working at the Country Inn that Plaintiff would live on-site rent free, that the business would pay for all utilities, and that Plaintiff would receive $400 in weekly compensation. The agreement is reasonable and should be accepted by the Court pursuant to 29 C.F.R. 785.23. Summary judgment on Plaintiff's FLSA claim is therefore proper.

### B. Individual Coverage

The Court granted Plaintiff the opportunity to conduct discovery on the issue of individual coverage under the FLSA. The only discovery she engaged in were interrogatories and requests for production of documents, of which she propounded identical sets to Defendants. Discovery has not revealed facts showing that Plaintiff was engaged in anything other than purely local activities.

Plaintiff's work at the Country Inn is akin to an employee locally working with goods shipped in interstate commerce which the Supreme Court has held fall beyond the scope of FLSA individual coverage. *McLeod v. Threlkeld*, 319 U.S. 419, 63 S.Ct. 332 (1943). Plaintiff admits that her work at the Country Inn was conducted entirely in Hot Springs, Arkansas. *See* the Declaration of Cathy O'Quinn. She did not travel. As the front desk receptionist at the twenty-eight-room motel, Plaintiff booked reservations in Hot Springs. *See* the Declaration of Cathy O'Quinn, ¶¶ 4–7. She processed payments in Hot Springs. *See* the Declaration of Cathy O'Quinn, ¶¶ 4–5, 12. She answered calls into the Country Inn's phones in Hot Springs. *See* the Declaration of Cathy O'Quinn, ¶¶ 4, 9–10. She checked patrons into and out of the motel in Hot Springs. *See* the Declaration of Cathy O'Quinn, ¶¶ 4, 6. She answered questions about the motel and assisted its guests in Hot Springs. *See* the Declaration of Cathy O'Quinn, ¶¶ 4, 11. Plaintiff contends that some of the motel's patrons were from outside of the State of Arkansas and concludes that she was thus engaged in interstate commerce when working at the

Country Inn's front desk, thereby triggering individual coverage under the FLSA. *See* the Declaration of Cathy O'Quinn, ¶ 10.

Even if Plaintiff took some calls from out-of-state guests or potential guests, Plaintiff was still only engaging in a purely local activity. She booked reservations for a motel in Hot Springs, Arkansas. It is not as though Plaintiff fielded customer calls, took the customer's name, address, and credit card number, and then shipped a good, product or service to an out-of-state customer. Because of the obvious nature of the business, Plaintiff fielded customer calls who booked reservations and then the customers traveled to Hot Springs to consummate the transaction. 100% of the parties' transaction—purchasing a room in the motel and selling a room in a motel—occurred in Hot Springs. The process of paying for the room occurred in Hot Springs regardless of where the person making the payment may have been standing when giving Plaintiff their credit card number. The out-of-state patrons, if any, of the motel are immaterial to the analysis as the entirety of Plaintiff's employment duties and activities occurred in Hot Springs.

The plaintiff in *McCeod v. Threlkeld* worked for a contractor who provided meals for railroad workers. He cooked and tended to the railroad workers and argued that his use of goods shipped in interstate commerce entitled him to individual coverage under the FLSA. The Supreme Court rejected his argument, noting that in drafting the "Fair Labor Standards Act, 29 U.S.C.A. § 201, et seq., Congress did not intend that the regulation of hours and wages should extend to the furthest reaches of federal authority." *Id.*, 319 U.S. at 493, 63 S.Ct. at 1249. Congress expressly rejected an expanded FLSA coverage: "The selection of the smaller group was deliberate and purposeful." *Id.* The Court explained the distinction between those engaged in interstate commerce and those employed locally:

> So handlers of goods for a wholesaler who moves them interstate on order or to meet the needs of specified customers are in commerce, while those employees who handle goods after acquisition by a merchant for general local disposition are not.

*Id.*, 319 U.S. at 494. The man who cooked with food shipped in interstate commerce was not entitled to FLSA individual coverage.

Participation in interstate commerce is not the test. Individual coverage is determined by direct, regular, repeated participation in interstate commerce as a necessary and essential component of the business. Plaintiff here may have peripherally been connected to interstate commerce, but her activities, like the railroad cook, were purely local in nature. She booked rooms at a motel in Hot Springs for people to ultimately traveled to Hot Springs to stay in the motel.

The case of *Russell v. Cont'l Restaurant, Inc.*, 430 F. Supp. 2d 521 (D. Md. 2006) provides guidance. The plaintiff in that case worked at Pegaso, a restaurant located in Montgomery County, Maryland. She sued Pegaso where she worked as a waitress and its owners alleging violations of the FLSA and various claims under Maryland law. The plaintiff alleged that "she was 'engaged in commerce' when she performed the following duties: (1) communicating across state lines with respect to vendors, customers, and credit card payments and (2) handling goods which were 'moved in interstate commerce.'" *Russell*, 430 F. Supp. 2d at 525. The Court concluded that, notwithstanding the plaintiff's interactions with out-of-state customers, her employment at Pegaso did not rise to the level of "engaged in commerce" that would afford FLSA coverage:

> Despite Plaintiff's contentions to the contrary, this court remains unconvinced that Plaintiff's interaction with customers from another state constitutes engaging in commerce. All parties concede that Pegaso is essentially a local restaurant. While Plaintiff alleges that certain Pegaso's customers were traveling interstate, she has not come forward with any logical reason for the court to accept this assertion. Furthermore, even if Plaintiff could prove that various customers in the restaurant were traveling from one state to another, this Court finds that this fact alone would be insufficient to show here engagement in commerce within the meaning of the Act. While serving out-of-state patrons may "affect" commerce, this activity does not reflect that Plaintiff was employed in the "channels of commerce."

*Id.* "It is also clear that communications with vendors and processing of credit card payments do not bring Plaintiff's claim within the ambit of the FLSA." The Court thus ruled that "Plaintiff's former

9

employer is not an 'enterprise engaged in commerce' and that here responsibilities at Pegaso did not involve the channels of commerce" and dismissed the action. *Id.*, 430 F. Supp. 2d at 527.

In *Shoemaker v. Lake Arbutus Pavilion, LLC*, 115 F. Supp. 3d 974 (W.D. Wis. 2015), the plaintiffs sued their former employer, a skating rink, diner, and bar, alleging wage and time violations of the FLSA. Again the plaintiffs argued that "they are covered by the FLSA because they performed work: (1) related to the actual movement of commerce; and (2) using the channels of commerce." Rejecting the plaintiff's argument, the Court noted that the "FLSA applies to those who are *engaged* in commerce; it is not enough to show that the employee's activities *affected* commerce." 115 F. Supp. 3d at 979 (emphasis in original). "For an employee to 'engage in commerce' himself, his work must be 'so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity.'" *Id.* (quoting *Mitchell v. C.W. Vollmer & Co.*, 349 U.S. 427, 429 (1955)). "This is a practical inquiry that focuses on the specific activities of the employee and what kind of effect those activities might have on interstate commerce." *Id.*

The plaintiffs argued, as Plaintiff does here, that they provided services to customers from out-of-state and were therefore engaged in commerce. The Court disagreed: "But the services that they provided were local, at the skate counter or the diner, for example. Serving some out-of-state patrons who visit the rink alongside the local patrons does not make the service 'so directly and vitally related to the functioning' of LAP as a facility of interstate commerce as to *constitute* interstate commerce." *Id.*, 115 F.Supp.3d at 979. (emphasis in original). "At best," the Court concluded, "their service was a local activity that may have *affected* interstate commerce." *Id.* (emphasis in original).

The plaintiffs' final argument was "that they performed work using interstate mail, telephone, and the internet, which are all instrumentalities of interstate commerce. In their affidavits attached to their response to the motion for summary judgment, the plaintiffs swear "that they 'regularly' used

10

Facebook, credit cards, and the texting capabilities of their cell phones." *Shoemaker*, 115 F. Supp. 3d at 979–80.  The Court rejected the plaintiffs' argument, ruling that the plaintiffs "fail[ed] to specify what exactly they mean by 'regularly,' and they fail[ed] to support their statements with evidence." *Id.*  The Court held that such "general and conclusory" proposed facts are insufficient "because 'Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.'"  *Id.*  The Court ruled that, even assuming the truthfulness of the plaintiffs' affidavit (which the court found to be not credible), the plaintiffs still had not "adduced evidence to suggest that these activities were regular and recurring. . ."  *Id.*  "Instead, the undisputed facts show that the Shoemakers worked for a local business in an intrastate capacity."  *Id*, 115 F. Supp. 3d at 980–81.

Plaintiff's affidavit in this case, filed in response to Defendant's first motion for summary judgment, contains the same sort of general and conclusory statements at issue in *Shoemaker*.  Plaintiff claims that she "regularly booked reservations of out-of-state guests via telephone and/or the internet."  *See* Affidavit of Cathy O'Quinn, ¶ 7.  All attempts by Plaintiff to buttress her vague assertion that she booked out-of-state are qualified and do not demonstrate that out-of-state bookings were a "regular and recurrent part" of her duties at Country Inn: "Many of the phone calls I received . . . were from guests or potential guests who lived outside of the State of Arkansas." *Id.*, ¶ 10.  Her claims that she engaged in interstate commerce are vague and conclusory.  At best, Plaintiff's activities "affected" interstate commerce.

The FLSA "makes no distinction as to the percentage, volume, or amount of activities of either employee or employer which constitute engaging in commerce or in the production of goods for commerce." *Shoemaker*, 115 F. Supp. 3d at 980 (quoting 29 C.F.R. § 776.3).  "However, the

activities must be 'regular and recurring." *Id.* Periodic and varying phone calls allegedly from out-of-state is far from "regular and recurring."

The fact that Defendants have and maintain a website that is used by customers to book and reserve rooms at the Country Inn is immaterial to the analysis. To determine whether an employee is engaged in interstate commerce, "a court must focus its inquiry on the activities of the employee and not on the business of the employer." *Russell*, 430 F. Supp. 2d at 524 (citing *Mitchell v. Lublin McGaughy & Assocs.*, 358 U.S. 207 (1959)); *see also McLeod v. Threlkeld*, 319 U.S. 491, 497 (1943) ("It is not important whether the employer, in this case a contractor, is engaged in commerce. It is the work of the employee which is decisive."). That Defendants may have a website is irrelevant to determining whether Plaintiff was engaged in interstate commerce triggering FLSA individual coverage.

Plaintiff's work-related activities were confined to the motel in Hot Springs, Arkansas and the community surrounding the motel. It is undisputed that she answered the phone at the motel in Hot Springs. It does not matter that some of the phone calls Plaintiff fielded were made from outside of Arkansas. She booked and cleaned rooms in Hot Springs. Her activities—even when engaging with residents of other states—were purely local and do not afford her with FLSA individual coverage. Summary judgment on this claim is therefore proper.

## CONCLUSION

Plaintiff worked for Defendants at their motel in Hot Springs. She neither produced goods in commerce nor engaged in commerce. Her activities were purely local in nature. No fact learned in discovery evidences otherwise, and Plaintiff's opportunity to conduct further discovery has passed. *See* Final Scheduling Order (ECF No. 21, ¶ 1(a) ("**No discovery deadlines are extended by this order.**"). Thus, there is no individual coverage under FLSA. Plaintiff and Defendants reached an agreement before she began work at the Country Inn: perform the duties of resident manager and the Country Inn will pay you $400 per week and allow you to live comfortably on the property rent-free.

Considering the nature of the job, the agreement is reasonable. Plaintiff's position at the Country Inn is exempt from the FLSA wage and overtime requirements pursuant to 29 C.F.R. § 785.23.

WHEREFORE, premises considered, Defendants pray for summary judgment, that Plaintiff's FLSA action against them be dismissed with prejudice, that the Court relinquish federal jurisdiction over Plaintiff's supplemental state-law claims, and for all other just and proper relief.

Respectfully submitted,

Defendants


By: /s/ Hamilton Kemp
Hamilton Kemp, A.B.A. #2008283
Mann & Kemp, PLLC
221 West 2nd Street, Suite 408
Little Rock, Arkansas 72201
Phone:   (501) 222-7378
Fax:     (501) 222-78478
hamilton@mannkemp.com

## CERTIFICATE OF SERVICE

I hereby certify that I served a true and correct copy of the foregoing upon the following counsel of record via the Court's electronic filing system on this the 27th day of February 2018:

Josh West
Josh Sanford
Sanford Law Firm, PLLC
650 South Shackleford Road, Suite 411
Little Rock, Arkansas 72120

/s/ Hamilton Kemp